UN Sealed 2-10-20
Public and unofficial staff access to this instrument are prohibited by court order.

United States District Court
Southern District of Texas
FILED

FEB 10 2020

David J. Bradley, Clerk of Court

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER: (1) AUTHORIZING THE USE OF A PEN REGISTER AND TRAP AND TRACE DEVICE, AND (2) AUTHORIZING RELEASE OF SUBSCRIBER AND OTHER INFORMATION ON AT&T CELLULAR TELEPHONE NUMBER (631) 310-6320 | § § § § § § § § § § § § | Magistrate Case No. B-19-913-11J<br><br>(UNDER SEAL) |

## APPLICATION FOR PEN REGISTER AND TRAP AND TRACE DEVICE

**A. INTRODUCTION**

**Paul Marian**, an Assistant United States Attorney for the Southern District of Texas, hereby applies to the Court for an Order:

1. Pursuant to 18 U.S.C. §§ 3122 and 3123, authorizing the installation and use of a pen register and trap and trace device[1] on telephone number Mobile Identification Number (MIN):

(hereinafter referred to as the "**Target Device**"), a mobile telephone issued by AT&T subscribed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

---

[1] A "pen register" is a "device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication ..." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number" or other identifiers "reasonably likely to identify the source of a wire or electronic communication, provided, however, that such information not include the contents of any communication." 18 U.S.C. § 3127(4).

2. Pursuant to 18 U.S.C. §§ 2703(c), 2703(d), 3122, and 3123 and 47 U.S.C. § 1002, directing the **Target Device's** service provider (including any internet service provider or other electronic communications provider providing voice-over IP telephony [VoIP]),[2] and any and all other telecommunication providers, persons, or entities providing wire or electronic communications service in the United States whose assistance may facilitate the execution of the Order, to disclose or provide, upon oral or written demand by agents of the **Drug Enforcement Administration (DEA)** (hereinafter the "**Investigative Agency**").

    a. For the **Target Device**, records or other information pertaining to subscriber(s) or customer(s) and call detail records[3] (including in two-way radio feature mode) for the sixty (60) days from the date the Order is signed by the Court (but not including the contents of communications).

    b. For the **Target Device** after receipt and storage,[4] records or other information pertaining to subscriber(s) or customer(s), including the means and source of payment for the service provided to the United States on a continuous basis for (a) the origination of a call from the **Target Device** or the answer of a call to the **Target Device**, (b) the termination of the call, but not including the contents of the communications.

---

[2] VoIP is essentially a type of hardware and software that allows people to use the internet as a transmission medium for telephone calls. In general, this means sending voice information in the form of digital packets of information rather than sending it through the traditional public switch telephone network.

[3] "Call detail records" are similar to toll records (i.e. historical telephone records of telephone activity, usually listing outgoing calls and date, time, and duration of each call), which are made and retained in the ordinary course of business. However "call detail records" is the term used when referring to toll records of mobile telephones rather than hardline telephones.

[4] "After receipt and storage" is intended to ensure that the information authorized under these paragraphs is information that is first captured and recorded by the provider before being sent to the Investigative Agency."

    c. **After receipt and storage**, the following subscriber records and other information for all published, non-published, or unlisted dialing, routing, addressing, or signaling information captured by the pen register and trap and trace device on the **Target Device**:

  (A) name;
  (B) address;
  (C) local and long distance telephone connection records, or records of session times and durations;
  (D) length of service (including start date) and types of service utilized;
  (E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address;
  (F) date of birth;
  (G) social security number;
  (H) driver's license (state and number);
  (I) contact names and numbers, and
  (J) employment information.

    d. Any and all changes (including additions, deletions, and transfers) in service regarding the **Target Device**, including telephone numbers (including International Mobile Subscriber Identity [IMSI] and Universal Fleet Member Identifier [UFMI]) and subscriber information (published, non-published, listed, or unlisted) associated with these service changes.

**B.** **CERTIFICATION FOR A PEN REGISTER AND A TRAP AND TRACE DEVICE PURSUANT TO 18 U.S.C. §§ 3122 AND 3123**

In support of this application, I state the following:

1. I am an "attorney for the Government" as defined in Rule 1(b)(1)(B) of the Federal Rules of Criminal Procedure, and therefore, pursuant to 18 U.S.C. § 3122, may apply for an order authorizing the installation and use of pen registers and trap and trace devices.

2. I certify that the information likely to be obtained from the pen register and trap and trace device on the **Target Device** is relevant to an ongoing criminal investigation being

conducted by the **Investigative Agency** in connection with possible violations of federal criminal statutes, including, Title 21 U.S.C. 841 and 846, Title 18 U.S.C. 1956 and Title 31 U.S.C. 5332, by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and others.

3. In accordance with 18 U.S.C. § 3121(c), Applicant has informed the **Investigative Agency** that it shall use technology reasonably available to it to restrict the recording or decoding of electronic or other impulses to the dialing, routing, addressing, and signaling information utilized in the processing and transmitting of wire or electronic communications so as not to include the contents of any wire or electronic communication.

4. Therefore, based upon the above Certification and pursuant to 18 U.S.C. §§ 3122 and 3123, I request that the Court issue an order authorizing:

a. The **Investigative Agency** to install or cause the provider to install and use a pen register device(s) anywhere in the United States to record or decode dialing, routing, addressing, or signaling information transmitted[5] from the **Target Device,** to record the date and time of such dialings, routings, addressing, or transmissions, and to record the length of time the telephone receiver in question is "off the hook" or connected for incoming or outgoing calls, for a period of sixty (60) days from the date the order is signed by the Court.

b. The **Investigative Agency** to install, or cause the provider to install and use a trap and trace device(s) on the **Target Device** anywhere in the United States to capture and record the incoming electronic or other impulses which identify the originating numbers or other dialing,

---

[5] Including dialing, routing, addressing, or signaling information transmitted over the communication service provider's network by a two-way radio feature (including, but not limited to, Nextel's "Direct Connect/Direct Dispatch," Verizon Wireless' "Push to Talk," or Sprint's "ReadyLink"). This two-way radio feature, like a walkie-talkie, provides communication between similarly equipped mobile phones by pressing a button on the telephone. As mentioned, information transmitted by the two-way radio feature will not disclose content of the call.

routing, addressing, or signaling information[6] reasonably likely to identify the source of a wire or electronic communication and to record the date, time, and duration of calls created by such incoming impulses, for a period of sixty (60) days from the date the Order is signed by the Court.

        c.      That, pursuant to 18 U.S.C. § 3123(b)(1)(c), the requested installation and use of a pen register as well as trap and trace device permit the use of each not only on the **Target Device**, but also on any changed telephone number(s) or MIN(s) subsequently assigned to an instrument bearing the same Electronic Serial Number (ESN), International Mobile Subscriber Identity (IMSI), International Mobile Equipment Identity (IMEI), Universal Fleet Member Identifier (UFMI), or Subscriber Identity Module (SIM) as **Target Device**, or any changed ESN, IMSI, IMEI, UFMI and/or SIM subsequently assigned to the same MIN as **Target Device**, and any additional changed MIN, ESN, IMSI, IMEI, UFMI and/or SIM, whether the changes occur consecutively or simultaneously, listed to the same subscriber or account number as **Target Device** within the 60-day period authorized by the Order.

     5.     I further request, pursuant to 18 U.S.C. §§ 3123(a)(1) and 3123(b)(2), the Order direct that the furnishing of information, facilities, and technical assistance necessary to accomplish the installation and operation of the pen register and trap and trace device by the **Target Device's** service provider (including any internet service provider or other electronic communications provider providing VoIP), <u>and any and all other</u> telecommunication providers,[7]

---

[6] Including dialing, routing, addressing, or signaling information transmitted over the communication service provider's network by a two-way radio feature (including, but not limited to, Nextel's "Direct Connect/Direct Dispatch," Verizon Wireless' "Push to Talk," or Sprint's "ReadyLink"). As mentioned, information transmitted by the two-way radio feature will not disclose content of the call.

[7] The reference to "any and all other telecommunication providers" is necessary so that the Court order is still effective in the event that the **Target Device** is transferred to another carrier pursuant to "Local Number Portability"

5

persons, or entities providing wire or electronic communications service in the United States whose assistance may facilitate the execution of the Order (hereinafter, collectively, the "**Target Device's Service Provider[s]**"), occur unobtrusively and with a minimum of interference with the services that are accorded the persons with respect to whom the installation and use is to take place, with reasonable compensation to be paid by the **Investigative Agency** for reasonable expenses directly incurred in providing such information, facilities, and assistance.

6. I further request that the Order direct the **Target Device's Service Provider(s)** furnish the results of the pen register and trap and trace devices to the **Investigative Agency** as soon as practicable.

7. I further request, because it is necessary to advance the purposes of this investigation, that the Court's Order direct the **Target Device's Service Provider(s)** not to terminate or restrict service to the **Target Device**; provided that, upon notice to the **Investigative Agency** that the **Target Device's** service would otherwise be terminated for non-payment pursuant to routine billing practices, the **Investigative Agency** timely agrees in writing to assume financial responsibility for all services provided to the **Target Device** after termination would otherwise have been effectuated and continuing to the earlier of the **Investigative Agency's** written notice to terminate service or to the expiration of the Court order (and any extensions thereof).

---

("LNP"). LNP allows a telephone user to change his telephone company but still keep the same telephone number. However, to transfer (i.e. "port") a telephone number pursuant to LNP, the subscriber information must remain the same. Thus, this reference applies if the **Target Device** is transferred (i.e. "ported") to another telephone carrier, but the telephone number and subscriber information remain the same.

C.  **SPECIFIC AND ARTICULABLE FACTS ESTABLISHING REASONABLE GROUNDS TO BELIEVE THAT SUBSCRIBER RECORDS RELEVANT AND MATERIAL TO AN ONGOING CRIMINAL INVESTIGATION PURSUANT TO 18 U.S.C. § 2703**

1. 18 U.S.C. § 2703(d) provides that a court may issue an order authorizing disclosure of a record or other information pertaining to a telephone subscriber or customer (not including the contents of communications) when a United States agency provides the Court with "Specific and articulable facts showing that there are reasonable grounds to believe that ... the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

2. The statute, by its own language, precludes holding the United States to a higher standard of proof, such as probable cause. See Communications Assistance for Law Enforcement Act (CALEA), Pub. L. No. 103-414 § 207(2), reprinted in 1992 U.S. Code Cong. & Admin. News 4292. The House Report reflected that "[t]his section imposes an intermediate standard to protect on-line transactional records. It is a standard higher than a subpoena, but not a probable cause warrant." See H.R. Rep. No. 103-827, at 31-32 (1994), reprinted in 1994 U.S.C.A.A.N. 3489, 3511-12.

3. For the purposes of obtaining a court order for disclosure as described in 18 U.S.C. §§ 2703(c)(1)(B) and 2703(c)(2), and in order to satisfy the requirements of 18 U.S.C. § 2703(d), Applicant, based on discussions with DEA Special Agent (SA) Alejandro Lara, hereby sets forth the following specific and articulable facts showing that there are reasonable grounds to believe that the records and other information identifying subscribers (but not including the contents of communications) for telephone numbers identified through the pen register and trap and trace

device on the **Target Device**, subscriber information associated with any service changes regarding the **Target Device**, and the records or other information pertaining to subscribers (but not including the contents of communications) for the **Target Device** will be relevant and material to an ongoing criminal drug investigation:

    a. The Drug Enforcement Administration (DEA) is investigating allegations that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and others are importing or causing to be imported cocaine into the United States from Mexico and subsequently further distribution to unknown destinations throughout the U.S. Additionally, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and others are believed to be transporting their narcotic proceeds from destinations throughout the U.S. back to Rio Grande Valley, Texas area.

    b. On August 2019, at the direction of the Agents, a confidential source placed a call to ▓▓▓▓▓▓▓▓ at the **Target Device**. Confidential source advised Agents that the meeting with ▓▓▓▓▓▓ was going to take place at a Flying J Gas Station in Edinburg, Texas. Agents conducted surveillance of confidential source meeting with ▓▓▓▓▓▓. On the same date, after the meeting with ▓▓▓▓▓▓, Agents debriefed the confidential source at a predetermined neutral location. The confidential source stated that ▓▓▓▓▓▓ smuggles the illegal narcotics from Mexico into the Rio Grande Valley Area. ▓▓▓▓▓▓ informed the confidential source that once the illegal narcotics are in Rio Grande Valley Area, ▓▓▓▓▓▓ then facilitates the delivery of the illegal narcotics to Atlanta, Georgia.

    c. The confidential source stated that ▓▓▓▓▓▓ could transport kilograms of cocaine for the confidential source to Atlanta, Georgia, and bring the money proceeds to the Rio Grande Valley Area. Confidential source stated that ▓▓▓▓▓▓ said he takes about thirty to forty

kilograms of cocaine to Atlanta, Georgia, to a black male and later between seven to ten days, the black male calls ▓▓▓▓▓▓ cousin back to inform him that he already has the narcotics proceeds.

  d. After further investigation, Agents were able to identify ▓▓▓▓▓ aka ▓▓▓▓▓ as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ through the use of open sources and law enforcement databases. Agents were able to obtain a recent photograph of ▓▓▓▓▓▓▓▓▓▓▓ from a U.S. based driver license and was able to positively identify ▓▓▓▓▓▓▓▓▓▓▓▓ to be ▓▓▓▓ ▓▓▓ that met with confidential Source on August 2019 in Edinburg, Texas, discussing the transportation of bulk cocaine from the Rio Grande Valley area in Texas to Atlanta, Georgia.

  e. Based on my training and experience it is known that subjects involved in the illegal drug trade commonly change cell phones, cell phone providers, use fake and pseudo-names, or no identifying and/or subscriber information such as in Pre-Paid Phones. The **TARGET DEVICE** referenced in paragraph 1, ▓▓▓▓▓▓ is subscribed to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓, Edinburg, Texas 78541, and being utilized by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

  f. Based off this information, it is respectfully requested that Agents to be granted this Pen Register and Trap and Trace Device request. This request is made in order to track and monitor suspects activities and behaviors, routes of transportation, may lead to further seizures of narcotics and narcotic transaction proceeds, and assist in identifying any other known and unknown associates in this Drug Trafficking Organization.

  g. In SA Lara's experience, subjects involved in drug distribution very often use multiple cell phones to compartmentalize their operations so certain subjects will only be privacy to certain phone numbers. Additionally, multiple cells phones are utilized to better elude and confuse law enforcement.

h. In SA Lara's experience, information identifying the subscribers for numbers captured by a pen register and trap and trace device, and subscriber information associated with service changes, has yielded information that is relevant and material to, but not limited to, public corruption and narcotics investigations. Such information includes leads relating to:

>    a) the names of suspected suppliers, customers, and other individuals who assist in the distribution of narcotics,
>
>    b) the location of "stash" houses where narcotics are stored,
>
>    c) the identity of transportation sources used by the traffickers,
>
>    d) the location of money transfer businesses used by members of the operation to launder proceeds from drug trafficking activities or through money which is exchanged through co-conspirators,
>
>    e) the geographic breadth of the suspected trafficking cell, and

i. the identities of potential organizers, leaders, managers, or supervisors of the suspected trafficking cell by examining the calling patterns revealed by the toll data.

j. SA Lara has advised Applicant that based upon his training and experience, one way to identify co-conspirators is to evaluate the pattern of calls made to and from the **Target Device** – and to obtain information identifying subscribers for these calls – and then conduct an investigation concerning those individuals. Based upon subscriber information, SA Lara may then direct, where appropriate, other investigators to conduct surveillance at these individuals' addresses and determine if criminal activity was occurring there, which in turn could yield potential names of co-conspirators.

k. Obtaining the subscriber name, address, date of birth, social security number, driver's license information, contact names and numbers, employment information and method of payment is critical to accurately identifying such subscribers because, among other things:

(i) if the subscriber name is a common one and/or the subscriber address is not current, it can be difficult to accurately identify the subscriber without a date of birth, driver's license, or social security number, especially in an area with a population large as that of the Southern District of Texas;

(ii) if the subscriber name and address is fictitious, which frequently is the case when criminals purchase telephones, all or part of the remaining identification information may be truthful and help identify the subscriber or lead to identifying other co-conspirators; and

(iii) by accurately identifying subscribers using the above-requested information, agents can eliminate innocent individuals as targets.

4. Accordingly, based upon the above proffer, and pursuant to 18 U.S.C. §§ 2703(c)(1)(B), 2703(d), 3122, and 3123, because there are reasonable grounds to believe that such information is relevant and material to the ongoing investigation, I further request that the Court issue an Order requiring the **Target Device's Service Provider(s)** to disclose, or provide upon oral or written request by Special Agents/Task Force Officers of the **Investigative Agency**, the information set forth above in Section A2.

D. <u>**REQUEST THAT THE ORDER PRECLUDE NOTICE AND THAT THE APPLICATION AND ORDER BE FILED UNDER SEAL**</u>

Based upon the information provided in this application, I believe disclosure of the requested court Order may result in flight from potential prosecution or the destruction of or tampering with evidence, or may otherwise seriously jeopardize the investigation. Moreover, the exact nature of the United States "pen register" device and its configuration is classified as a law

11

enforcement sensitive investigative technique, the disclosure of which would likely jeopardize other on-going investigations, and/or future use of the technique. Therefore, pursuant to 18 U.S.C. §§ 2705(b) and 3123(d), I request that this application and Order be **SEALED**, that the identity of any targets of the investigation may be redacted from any copy of the order served on any service provider or other person, and that the Court direct the **Target Device's Service Provider(s)** not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of the Order, in full or redacted form, of the pen register or trap and trace devices, or of this investigation, to the listed subscriber(s) for the **Target Device**, the occupant of said premises, the subscribers of the incoming calls to or outgoing calls from the **Target Device**, or to any other person the listed subscriber(s) for the **Target Device**, or to any other person until otherwise ordered by this Court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on September 3, 2019, in Brownsville, Texas.

Respectfully submitted,
RYAN K. PATRICK
United States Attorney

By: /s/ Paul Marian
**PAUL MARIAN**
Assistant United States Attorney
Texas Bar No. 24078990
Fed. Bar No. 3312749
600 E. Harrison St., #201
Brownsville, TX 78520
Tel: (956) 548-2554
Fax: (956) 548-2711

12